FRANK EDISIS, complainant,

*v.*

HYMAN SOLOMON and AMERICAN MATTRESS COMPANY, a corporation, defendants.

[Decided July 10th, 1930.]

*Mr. Israel B. Greene,* for the complainant.

*Messrs. Stein, McGlynn & Hannoch,* for the defendants.

BACKES, V. C.

Edisis and Solomon associated as sole stockholders of the American Mattress Company in May, 1928. Edisis had previously operated a company engaged in the same line of business, of which he was the single stockholder. His interest in the company, supposedly worth $7,000, was to be turned over to the new company and Solomon was to match that sum. Edisis' interest was later surcharged, reducing it to $4,500. Solomon contributed $5,300. They apportioned the capital stock accordingly. They were together six months when Solomon bought Edisis' interest for $1,500 in cash, $500 in company merchandise, a quilting machine, a cap machine, a Ford truck, all yard goods used for making quilts, and the cancellation of a $4,000 company debt due by another concern owned by Edisis. Six months later Edisis filed this bill to set aside the sale for fraud, claiming that he was induced to sell by Solomon's repeated false representations of the financial condition of the company "that we are not making any profit in this business and if this business stays long the way it is, we will have to go into bankruptcy," and that "one of us will have to go out." It is also charged that Solomon secretly appropriated $600 of commissions due the company, and that between the sale and delivery of the quilting goods Solomon stole $600 worth of it.

Edisis was in charge of the factory; Solomon was the outside man. They had a bookkeeper and an accountant who came in monthly. They had done but $50,000 of business and earned but $1,356.50. Each had drawn $75 a week wages, and not with regularity, for lack of funds. The representations attributed to Solomon as to the company's affairs, which he denies, if made, were evidently casual expressions of disappointment over two in a business so small in capital and limited in capacity for money making, and not as a statement of the company's condition, for Edisis knew of its affairs quite as well as Solomon; the business was not extensive; the office was in the factory and he was, as was Solomon, in close touch at all times with the bookkeeper and accountant, and he was no novice. He was not misled by

Solomon's "lamentations" and he cannot now translate them into representations.

Complicated and confusing computations made by accountants, offered on either side, upon analysis, are persuasive that Edisis got the lion's share of the deal, after driving a hard bargain, at which it is surmised he was not inept. His complaint that he acted without independent advice cannot be serious. He was quite the equal of Solomon; both are young, alert and circumspect. They themselves completed their negotiations, then went to their lawyer. He did not counsel them, he was simply their scrivener, reducing to writing their understanding, and correctly. He was Solomon's brother, but also he was or had been Edisis' lawyer, as he had been his father's.

The bookkeeper, Aaronson, who continued with Solomon for some months after Edisis quit, gave testimony that while the two were at the lawyer's office, November 22d, to have the contract drawn, Solomon telephoned him that they had concluded to separate and that Edisis was to get all the quilting material and asked him to hide some of the better quality because he hated to see Edisis get the better of the settlement; that he took out some $600 worth; that when the two returned he gave Solomon a knowing wink, and that later in the evening Solomon took the stolen goods away. Edisis says when he returned from the lawyer's office to get his merchandise, the woman in charge told him of the discrepancy in the stock; that what remained was sent to him, about $300 worth; that Solomon said there must have been a robbery and called the police.

The bookkeeper's testimony comes from an unreliable and unworthy source, low in moral sensibility for, he says, that at the time he helped steal the goods he thought it was right, and, at the hearing, would concede only that it was "crooked in a way." Remorse was not the motive for this scamp's self-implication. He "informed" after he was discharged for disloyalty and there is evidence of a monetary consideration. The woman in charge denies she told Edisis that the goods were missing. Solomon denies the bookkeeper's tale. He

says that Edisis packed and took away all his goods after they returned from signing the contract, November 22d, and that the next day Edisis complained of missing twenty-eight yards of silk worth $1.75 a yard, and the police were then. called. The police support him in this; they say the complaint came to them on the morning of the 24th and when they responded, Solomon reported that twenty-seven yards. of silk, seventy-five cents a yard, had been stolen and that. an employe was suspected, as he had been before. Two out-standing facts lend discredit to the charge: That Solomon. repeated to the bookkeeper, when he telephoned him from. the lawyer's office to steal the merchandise, that he and Edisis had concluded to separate and that Edisis was to get the quilting material. These facts he admits he knew from Solomon before the two went to the lawyer's office. Why repeat the information? The other: That Edisis closed the deal and executed releases to Solomon and the company after the theft, knowing of it, and not protesting that Solomon should share the loss; and never afterwards complain. The charge is not sustained though no brief can be held for Solomon's sense of honesty. Workmen, later, in tearing down shelfing, found two pieces of silk which Solomon appropriated and returned to the firm from which they were bought, re-ceiving a credit of $21. He was dishonest in not sending them to Edisis; but the attempt to link them to the supposed stolen quilting goods fails, for proof comes from the workmen that they accidentally discovered them later. However, whatever the truth may be, the supposed theft cannot be a ground for rescission because of a part failure of consideration. Edisis affirmed the contract with knowledge of the deficiency.

The charge that Solomon wrongfully appropriated commission belonging to the company, which should have appeared on the book as an item of the assets, and that to that extent there was misrepresentations as to the company's. condition, is not made out. Solomon had worked for a bed manufacturing concern, and when he took up with the com-pany he agreed with his employer to continue to serve his old.

customers on a commission basis. This netted him about $600. The claim is, that the commissions belonged to the company on the theory that he was a company official and had agreed to give his time exclusively to the company's affairs. Solomon says it was understood that he was to continue his agency, within the limited scope, to partly make up his loss of a $5,000 a year job he had given up for a $75 a week wage and the prospects. This defeats the implication.

The bill will be dismissed.